**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEVIN HICKS, | ) | CASE NO. 5:11cv76 |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | |
| BARBERTON POLICE DEPT., et al. | ) | AMENDED MEMORANDUM |
| | ) | OPINION & ORDER* |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is the unopposed motion for summary judgment filed by defendants Brian Davis ("Davis") and Martin Eberhart ("Eberhart") (collectively as "defendants"). (Doc. 22.). For the reasons that follow, defendants' motion is **GRANTED** and this case is **DISMISSED**.[1]

## I. FACTS AND PROCEDURAL BACKGROUND

At the outset, the Court notes where a motion for summary judgment is unopposed, "a court's reliance on the facts advanced by the movant is proper and sufficient." *Cacevic v. City of Hazel Park,* 226 F.3d 483, 491 (6th Cir. 2000) (quoting *Guarino v. Brookfield Twp. Trs.,* 980 F.2d 399, 404 (6th Cir. 1992) (citing dozens of decisions holding the same)).

*Pro se* Plaintiff Kevin Hicks filed this action under 42 U.S.C. §§ 1983, 1985, and 1986, seeking monetary damages against the City of Barberton, the Barberton Police Department, Barberton Police Chief Vincent Morber, Barberton Police Officers Eberhart, Davis and Stacy Colgan ("Colgan"), Canine Officer Art ("Art"), the City of Barberton Emergency Fire

---

[1] Plaintiff's motion to amend (Doc. 15) is **DENIED AS MOOT**.

* Amended to correct the date of arrest on page 2 from January 6, 2009 to January 16, 2009.

and Medical Service (AEMS), John/Jane Doe EMS responders,[2] and John/Jane Doe Barberton

Police Officers. In the complaint, plaintiff asserts multiple causes of action associated with his

arrest and prosecution on charges of resisting arrest and probation violations, including false

arrest, sham legal process, excessive force, deliberate indifference to medical need, racial

discrimination, assault, battery, malicious prosecution, and gross negligence. On July 22, 2011,

the Court dismissed all of Hicks's claims except for his excessive force claim against officers

Eberhart and Davis. (Doc. 9.)

The excessive force allegations in the complaint stem from Hicks's arrest on

January 16, 2009, pursuant to a capias warrant on charges that he had violated the terms of his

probation. On that evening, Officers Eberhart and Colgan went to Hicks's residence located at

303 Edwards Street, Barberton, Ohio, to arrest Hicks on the outstanding warrant. (Doc. 22-11 at

3-4, Trial Transcript, *State of Ohio, City of Barberton v. Kevin L. Hicks*, Barberton Municipal

Court Case No. CRB0900154 (Feb. 10, 2009); Doc. 22-12, *State v. Hicks*, No. 247058, 2011-

Ohio-2769, ¶¶ 1-2 (Ohio Ct. App. 9th Dis. June 8, 2011).)[3] The officers arrived in a marked

---

[2]Mr. Hicks amended his complaint on March 9, 2011 to include the individual EMS responders. (Doc. 8.)

[3] In support of their recitation of the facts, defendants have submitted the trial transcript of Hicks's state criminal trial (Doc. 22-11) and the opinion of the state appeals court addressing Hicks's appeal from his conviction. (Doc. 22-12.) Fed. R. Evid. 201(b) permits a court to take judicial notice of facts "not subject to reasonable dispute […]." Fed. R. Evid. 201(b). "The state court proceedings, which are a matter of public record, meet Federal Rule of Evidence 201(b)'s criteria." *Smith v. Maloon*, No. 2:09-cv-00954, 2010 WL 2761344, at *6 (S.D. Ohio July 13, 2010); *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir.1980) (taking judicial notice of the fact that the case before it arose from the same facts as those forming the basis of the judgment in the state court) (citing *Granader v. Pub. Bank,* 417 F.2d 75, 82-83 (6th Cir. 1969) (taking judicial notice of a habeas petitioner's state court filings for purposes of deciding an exhaustion question)). Further, the "sworn testimony from another trial is admissible on a motion for summary judgment[,] […] [and] […] serves the same purpose as an affidavit under Fed. R. Civ. P. 56[…]." *Dillon v. Lake Cumberland Marine, L.L.C.*, No. 6:01-CV-02-KKC, 2006 WL 3714185, at *7 (E.D. Ky. Dec. 14, 2006), *rev'd in part on other grounds by* 560 F.3d 591 (6th Cir. 2009) (internal citations omitted). *See, also, e.g., Ricupero v. Wuliger, Fadel & Beyer*, No. 1:91CV0589, 1994 WL 483871, at *4 (N.D. Ohio Aug. 6, 1994) ("[A] court may […] consider certified transcripts of prior testimony in deciding a motion for summary judgment.") (citations omitted). Hicks has not disputed any of the submitted testimony or the record of the state appeals court. If Hicks wanted to create a material fact issue as to any statement made by a witness in his criminal trial, he could have

2

police car and in police uniform. (*Hicks*, 2011-Ohio-2769, ¶ 2.) When the officers arrived, it was dark outside and snowing heavily. (Doc. 22-13, Hicks Dep. at 107.)

The officers observed Hicks park his car in the garage and walk toward the back or side of the house. (Hicks Dep. at 112-13; *Hicks*, 2011-Ohio-2769, ¶ 2.) Hicks testified that he was returning home from picking up some carryout food and was high on marijuana at the time. (Hicks Dep. at 111-12, 122.) According to Hicks, he was behind the house picking up trashcans, when the sound of a car entering his driveway startled him and he ran away, jumped a six-foot fence, and kept running towards Krieder Street, which runs parallel to Edwards Street. (Hicks Dep. at 114-15, 152, 159-60.) Hicks denies seeing the officers.

According to the officers, Hicks did see them exit their vehicle before he ran away. (Trial Tr. at 6.) Officer Eberhart asserts he announced himself as a police officer and shouted for Hicks to stop, but Hicks kept running, climbed the fence, and ran southward through the backyards of some neighboring houses. (*Id.* at 6, 14; *Hicks*, 2011-Ohio-2769, ¶¶ 2-3.) Eberhart testified that he yelled for Hicks to stop running two or three time, but Hicks did not comply. (Trial Tr. at 7.) Hicks denies ever seeing any officers or hearing anyone say for him to stop for the police. (Hicks Dep. at 115-20.)

Eberhart tracked Hicks's footprints through the snow to a wooded area at the end of Krieder Street. (*Hicks*, 2011-Ohio-2769, ¶ 3; Trial Tr. at 14.) Hicks testified that he hid in the

---

offered the deposition or affidavit of that witness explaining or qualifying the prior testimony, or other evidence rebutting the testimony. He has not done so. Accordingly, the Court hereby takes judicial notice of the record of the state court criminal proceedings related to this matter and the uncontroverted statements of the witnesses in Hicks's state criminal trial.

wooded area behind some houses at the end of the street. (Hicks Dep. 159-60.) Eberhart was unable to find Hicks.

Eberthart summoned canine officer Davis to the scene and explained the situation to him. (Trial Tr. at 26; Doc. 22-1, Davis Aff. ¶ 36.) Davis placed a tracking harness and fifteen-foot leash on the canine officer, Art, and Davis and the dog followed the tracks into the wooded area. (Trial Tr. at 20, 27-28, 38.) Eberhart drew his gun and followed Davis as back up. (*Id.* at 20.) Neither officer called out a warning to Hicks that they were entering the woods with a tracking dog. (Davis Aff. ¶ 44.)

After traveling past a couple houses, through a backyard, around a fence, and deeper into the wooded area, the police dog located Hicks sitting or lying behind a pile of wood or brush. (Trial Tr. at 28-29; *Hicks*, 2011-Ohio-2769, ¶ 4; Hicks Dep. at 119.) The pile was about two feet high by three or four feet wide. (Hicks Dep. at 135.)

Hicks says that it was when he was behind the wood/brush pile that he first saw the officers and that until that time he was unaware that he was being pursued by the police because he had not heard the officers identify themselves (*Id.* at 121-23, 136, 145.) According to Hicks, he put his hands in the air and announced his position when Davis was about ten feet away, and then Davis "sicced [sic] the dog on" him, telling Art to "get him." (*Id.* at 121-22, 148.) Davis did not call out a warning to Hicks prior to the dog entering the pile of brush/wood. (Davis Aff. ¶ 44; Trial Tr. at 35.)

The defendants give a different account of Hicks's arrest. According to the officers, without warning and without the officers seeing Hicks, Art dove behind the woodpile and latched on to Hicks's leg. (*Hicks*, 2011-Ohio-2769, ¶ 4; Trial Tr. at 23.) Davis says that he

4

did not see Hicks until after the dog had bit him and he had sat up on his knees. (*Hicks*, 2011-Ohio-2769, ¶ 4; Davis Aff. ¶ 39.) The officers state that Hicks did not react to the dog bite and made no sound when the dog engaged him. (Trial Tr. at 22, 43, 39.) The officers then ordered Hicks to lie on the ground, but he did not initially comply their orders. (*Hicks*, 2011-Ohio-2769, ¶ 5.) After several commands to lie down, Hicks complied. (*Id.*) Once Hicks complied, Eberhart handcuffed him, and Davis ordered the canine officer to release Hicks. (Trial Tr. at 23.) Art released Hicks upon Davis's command. (Davis Aff. ¶ 52.) Neither officer is alleged to have used any physical force after handcuffing Hicks, except for the force necessary to lift Hicks from the ground. (Hicks Dep. at 133-34.) The officers then transported Hicks to the Barberton police station and Barberton EMS was called to treat the dog bite on Hicks's leg. (*Id.* at 124-25.)

Following his arrest, Hicks was served the warrant for his arrest for a probation violation and was charged with resisting arrest. (*Id.* at 10; Doc. 22-8, Capias Warrant dated Nov. 7, 2008; *Hicks*, 2011-Ohio-2769, ¶ 6.) Hicks pleaded guilty to the probation violation and, after a bench trial, he was found guilty of resisting arrest. The Ninth District Court of Appeals of Ohio affirmed his conviction. (*Hicks*, 2011-Ohio-2769, ¶¶ 6, 50.) Hicks did not appeal the decision to the Ohio Supreme Court.

The defendants have moved this Court for summary judgment on Hicks's excessive force claim. They contend that Hicks's claim is barred the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), that they are entitled to qualified immunity, that Hicks's claim is not cognizable against the officers in their individual capacities, and that Hicks's punitive damages claim fails because they did not act recklessly. Hicks has not disagreed. This Court finds defendants' motion well-taken.

## II.    DISCUSSION

### A.  Summary Judgment Standard

The Court will grant a properly supported motion for summary judgment if "the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, the movant is not required to file affidavits negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Rule 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.,* 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

In this case, plaintiff Hicks has failed to file any response to defendants' motion. Under *Guarino v. Brookfield Township Trustees*, the Court is not required to conduct its own probing investigation of the record to discover an issue of material fact when a summary judgment motion is unopposed. 980 F.2d at 407. Nevertheless, the Court must still "carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* As such, summary judgment is

proper if defendants meet their burden in moving for summary judgment. *Cacevic v. City of Hazel Park,* 226 F.3d 483, 492 (6th Cir. 2000).

## B. Analysis

Defendants first argue that Hicks cannot maintain his excessive force claim pursuant to § 1983 because his conviction for resisting arrest has not been invalidated.

In *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court held that a plaintiff cannot recover under § 1983 when the basis for the claim necessarily implies the invalidity of a previous state-court criminal conviction. *Id.* at 486-87. As an example, the Court explained that a criminal defendant who is convicted of resisting arrest, "defined as intentionally preventing a peace officer from effecting a *lawful* arrest," cannot later bring a § 1983 action alleging that the arresting officer violated the Fourth Amendment. *Id.* at 487 n. 6 (emphasis in original). Any recovery would necessarily mean that the arrest was not lawful, which would negate an element of the resisting arrest conviction. *Id.*

Hicks was charged with resisting arrest under Ohio Rev. Code § 2921.33(A) (*Hicks*, 2011-Ohio-2769, ¶ 6), which provides that, "No person, recklessly or by force, shall resist or interfere with a *lawful* arrest of the person or another." Ohio Rev. Code § 2921.33(A) (emphasis added). "A conviction for resisting arrest thus requires that the underlying arrest be lawful." *Swiecicki v. Delgado*, 463 F.3d 489, 494 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007). "An arrest is not lawful, under Ohio law, if the arresting officer used excessive force." *White v. Ebie*, 191 F.3d 454 (Table), 1999 WL 775914, at *1 (6th Cir. Sept. 24, 1999) (citing *Ohio v. Hendren*, 674 N.E.2d 774, 776 (Ohio Ct. App. 1996)). A

conviction on such a charge, therefore, "necessarily includes a finding that the police officer did

not use excessive force." *Swiecicki*, 463 F.3d at 494 (citing *White*, 1999 WL 775914, at *1).

"Thus, *Heck* applies to bar a § 1983 claim if a struggle between a plaintiff and

police officers gives rise to both the plaintiff's resisting arrest conviction and the plaintiff's

excessive force claim, 'and the two are inextricably intertwined.'" *Matheney v. City of*

*Cookeville , Tenn.*, No. 2:08-cv-0066, 2010 WL 1417947, at *5 (M.D. Tenn. Apr. 7, 2010), *aff'd,*

No. 10-5546, 2012 WL 372974 (6th Cir. Feb. 7, 2012), (quoting *Cummings v. City of Akron,* 418

F.3d 676, 682-82 (6th Cir. 2005)); *see also, Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010)

(holding an excessive force claim conflicts with a conviction when excessive force is an

affirmative defense to the crime). In contrast, "[w]hen the alleged excessive force is used *after*

the suspect ceases resisting arrest, the *Heck* rule does not apply." *Michaels v. City of Vermillion*,

539 F. Supp. 2d 975, 992 (N.D. Ohio 2008) (emphasis in original) (citation omitted). "In that

case, the excessive force could not have operated as a defense to the resisting arrest charge, and

the § 1983 claim does not necessarily imply the invalidity of the conviction." *Matheney*, 2010

WL 1417947, at *5.

Here, Hicks does not claim, nor does the evidence show, that the officers or the

dog applied any force upon him *subsequent* to his arrest. The undisputed facts establish that

Davis ordered the dog to release Hicks immediately after he was handcuffed and that the only

force applied to Hicks thereafter was the minimal amount of force necessary to lift him from the

ground. Indeed, Hicks's excessive force claim focuses solely on the officers' use of the police

dog and the injuries that the dog inflicted on him.

On these facts, the Court concludes that Hicks's conviction for resisting arrest and his claim for excessive force against officers Davis and Eberhart are inextricably intertwined and his claim is therefore barred by *Heck*. The state trial court found Hicks guilty of resisting arrest on the grounds that Hicks physically resisted the officers or the police dog when he did not comply with the officers' orders to lie down. It is indisputable that Hicks's resistance occurred *after*, or at least concurrently with, the dog finding and biting him. Unquestionably, Hicks could have raised the dog's excessive force as a defense to the charge of resisting arrest at trial. Hicks did not do so.[4] The state appeals court affirmed Hicks's conviction, and he has not appealed that decision. Hicks has not shown that his conviction for resisting arrest has been vacated, set aside or other invalidated and, until he does, *Heck* bars his claims of excessive force during his arrest. *See Matheney*, 2010 WL 1417947,  at *5 (concluding *Heck* bars an excessive force claim when it arises from injuries inflicted by a police dog before or during an arrest and excessive force could have been raised as an affirmative defense to the resisting arrest charge). Any § 1983 claim for excessive force would necessarily invalidate Hicks's criminal conviction for resisting arrest. Accordingly, defendants Eberhart and Davis are entitled to judgment as a matter of law.

Because the Court has found that Hicks's excessive force claim is barred by *Heck*, it need not address defendants' remaining arguments regarding their entitlement to qualified immunity, plaintiff's alleged failure to name defendants in their individual capacities, or plaintiff's claim for punitive damages.

---

[4] On appeal from his conviction, Hicks did in fact argue that the dog's excessive force rendered his arrest unlawful. *Hicks,* 2011-Ohio-2769, ¶¶ 26-27. However, the appeals court declined to address Hicks's argument because "he failed to preserve any objection on [this] issue[] at the trial court and [it was] not addressed in his motion for acquittal." *Id.* at ¶¶ 28-29.

### III.    CONCLUSION

For all of the foregoing reasons, defendants' unopposed motion for summary judgment is **GRANTED** and this case is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: November 15, 2012

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**